**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

JOHNATHAN L. CARTER,

       Plaintiff,

v.                                              CIV 17-1075 KBM

NANCY A. BERRYHILL,
Acting Commissioner of Social
Security Administration,

       Defendant.

# MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on Plaintiff's Motion to Reverse or Remand Administrative Agency Decision (*Doc. 27*) filed on April 26, 2018. Pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73(b), the parties have consented to me serving as the presiding judge and entering final judgment. *See Docs. 5, 7, 9.* Having considered the record, submissions of counsel, and relevant law, the Court finds Plaintiff's motion is well-taken and will be granted in part.

## I.    Procedural History

On July 21, 2014, Mr. Johnathan Carter (Plaintiff) filed applications with the Social Security Administration for a period of disability and disability insurance benefits under Title II of the Social Security Act (SSA), and for Supplemental Security Income under Title XVI of the SSA. Administrative Record[1] (AR) at 11, 200-09. Plaintiff alleged a disability onset date of December 1, 2013. AR at 11, 200, 204. Disability

---

[1] Document 15-1 contains the sealed Administrative Record. *See Doc. 15-1.* The Court cites the Administrative Record's internal pagination, rather than the CM/ECF document number and page.

Determination Services (DDS) determined that Plaintiff was not disabled both initially

(AR at 93-94) and on reconsideration (AR at 121-22). Plaintiff requested a hearing with

an Administrative Law Judge (ALJ) on the merits of his applications. AR at 142-43.

Both Plaintiff and a vocational expert (VE) testified during the *de novo* hearing.

*See* AR at 36-70. ALJ Ann Farris issued an unfavorable decision on July 11, 2016. AR

at 8-27. Plaintiff submitted a Request for Review of Hearing Decision/Order to the

Appeals Council (AR at 199), which the council denied on August 28, 2017 (AR at 1-7).

Consequently, the ALJ's decision became the final decision of the Commissioner. *See*

*Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003).

## II.     Applicable Law and the ALJ's Findings

A claimant seeking disability benefits must establish that he is unable "to engage

in any substantial gainful activity by reason of any medically determinable physical or

mental impairment which can be expected to result in death or which has lasted or can

be expected to last for a continuous period of not less than 12 months." 42 U.S.C.

§ 423(d)(1)(A); *see also* 20 C.F.R. § 404.1505(a). The Commissioner must use a

sequential evaluation process to determine eligibility for benefits. 20 C.F.R.

§§ 404.1520(a)(4), 416.920(a)(4); *see also Wall v. Astrue*, 561 F.3d 1048, 1052 (10th

Cir. 2009).

The claimant has the burden at the first four steps of the process to show: (1) he

is not engaged in "substantial gainful activity"; (2) he has a "severe medically

determinable . . . impairment . . . or a combination of impairments" that has lasted or is

expected to last for at least one year; and (3) his impairment(s) meet or equal one of the

listings in Appendix 1, Subpart P of 20 C.F.R. Pt. 404; or (4) pursuant to the

assessment of the claimant's residual functional capacity (RFC), he is unable to perform his past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(i-iv), 416.920(a)(4)(i-iv); *see also Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005) (citations omitted). "RFC is a multidimensional description of the work-related abilities [a claimant] retain[s] in spite of [his] medical impairments." *Ryan v. Colvin*, Civ. 15-0740 KBM, 2016 WL 8230660, at *2 (D.N.M. Sept. 29, 2016) (citing 20 C.F.R. § 404, Subpt. P, App. 1 § 12.00(B); 20 C.F.R. § 404.1545(a)(1)). If the claimant meets "the burden of establishing a prima facie case of disability[,] . . . the burden of proof shifts to the Commissioner at step five to show that" Plaintiff retains sufficient RFC "to perform work in the national economy, given his age, education, and work experience." *Grogan*, 399 F.3d at 1261 (citing *Williams v. Bowen*, 844 F.2d 748, 751 & n.2 (10th Cir. 1988) (internal citation omitted)); *see also* 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

At Step One of the process,[2] ALJ Farris found that while Plaintiff did perform some work after his alleged disability onset date, the "work activity did not rise to the level of substantial gainful activity." AR at 13. Consequently, Plaintiff had not engaged in substantial gainful activity since his alleged onset date of December 1, 2013. AR at 13 (citing 20 C.F.R. §§ 404.1571-1576, 416.971-976). At Step Two, the ALJ concluded that Plaintiff "has the following severe impairments: borderline intellectual functioning (BIF) and schizoaffective bipolar disorder." AR at 13 (citing 20 C.F.R. §§ 404.1520(c), 416.920(c)).

---

[2] ALJ Farris first found that Plaintiff's "earning record shows that [he] has acquired sufficient quarters of coverage to remain insured through March 30, 2018." AR at 11, 13.

At Step Three, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 [C.F.R.] Part 404, Subpart P, Appendix 1 . . . ." AR at 15 (citing 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926). In making her determination, ALJ Farris considered listings 12.02 (neurocognitive disorders), 12.04 (affective disorders), 12.05 (intellectual disorders) and 12.06 (anxiety related disorders). AR at 14. The ALJ first examined whether Plaintiff's mental impairments met the "paragraph B" criteria. She found that Plaintiff has mild restrictions in his activities of daily living, moderate difficulties in the area of social functioning, and moderate difficulties in the area of concentration, persistence or pace. AR at 14. The ALJ found that Plaintiff has not experienced any episodes of decompensation of extended duration. AR at 14. The ALJ also determined that Plaintiff did not meet the "paragraph C" criteria of 12.04, 12.05, or 12.06. AR at 15.

At Step Four, the ALJ found that while Plaintiff's "medically determinable impairments might be expected to cause some of the alleged symptoms[,]" the ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record . . . ." AR at 16. Ultimately, the ALJ found that Plaintiff

> has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: he must avoid hazards; he is limited to simple routine tasks with reasoning level one; he can have no interaction with the public; he is limited to occasional and superficial contact with co-workers; he cannot perform work with a production pace requirement.

AR at 15-16. ALJ Farris found that Plaintiff "is unable to perform any past relevant work" (AR at 19), but he is able to perform the positions of housekeeper/cleaner, laundry laborer, or laborer in a commercial setting/maintenance cleaner (AR at 20). The ALJ ultimately determined that Plaintiff "has not been under a disability, as defined in the Social Security Act, from December 1, 2013, through the date of [the ALJ's] decision." AR at 20 (citing 20 C.F.R. §§ 404.1520(f), 416.920(f)).

## III.     Legal Standard

The Court must "review the Commissioner's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005) (internal citation omitted)). A deficiency in either area is grounds for remand. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161, 1166 (citation omitted). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Lax*, 489 F.3d at 1084 (quoting *Hackett*, 395 F.3d at 1172 (internal quotation omitted)). "It requires more than a scintilla, but less than a preponderance." *Id.* (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004) (internal quotation omitted) (alteration in original)). The Court will "consider whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases, but [it] will not reweigh the evidence or substitute [its] judgment for the Commissioner's." *Id.* (quoting *Hackett*, 395 F.3d at 1172 (internal quotation marks and quotations omitted)).

"The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Id.* (quoting *Zoltanski*, 372 F.3d at 1200 (internal quotation omitted)). The Court "may not 'displace the agenc[y's] choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo.'" *Id.* (quoting *Zoltanski*, 372 F.3d at 1200 (internal quotation omitted)).

## IV. Discussion

Plaintiff sets forth two issues in his Motion. First, Plaintiff argues that it was error for the ALJ to give Dr. Sadowski's opinion little weight. *Doc. 28* at 14. Second, Plaintiff contends that he meets the criteria for a per se disabling mental impairment at Step Three. *Id.* at 14-18. The Court will remand based on the ALJ's failure to properly analyze whether Plaintiff meets the criteria for a disabling impairment under Listing 12.05C.

### A. Plaintiff has not demonstrated any reversible error in the ALJ's analysis of Dr. Sadowski's opinion.

Plaintiff argues that the ALJ should have given Dr. Sadowski's opinion controlling weight because it was consistent with substantial evidence in the record. *Doc. 28* at 14. Dr. Artur Sadowski, M.D., Plaintiff's treating psychiatrist, first saw Plaintiff in December 2014, and then treated him regularly between June 2015 and April 2016. *See* AR at 504-41, 554-606. The ALJ cited extensively to and provided the following comprehensive summary of Dr. Sadowski's treatment notes. *See* AR at 17-18.

When Plaintiff initiated treatment with Dr. Sadowski, he displayed no clear psychotic or manic symptoms, his PHQ-9 score of 15 indicated mild to moderate

depression, and he was not interested in medications. AR at 17, 504-07. Dr. Sadowski

assessed Plaintiff with bipolar related disorder, rule out intellectual disorder, alcohol

disorder in remission, and cannabis use in remission, and noted that he was at his

baseline. AR at 17, 504-07. In January 2015,[3] Plaintiff agreed to trial Zyprexa

(olanzapine), the first of four medications he has been prescribed in the relevant time

period, all of which are used to treat schizophrenia and bipolar disorder. *See* AR at 510;

https://www.drugs.com/zyprexa.html. Despite his girlfriend's report that he "was doing

very well on his new dosage" (AR at 17, 513), Plaintiff discontinued the Zyprexa and

expressed interest in using medical marijuana instead (AR at 17, 513, 515). Dr.

Sadowski "noted that this was the fifth or sixth time [Plaintiff] had discontinued

medications within a few months." AR at 17, 513.

In June 2015, Plaintiff returned to Dr. Sadowski to "seek[ ] help for racing

thoughts." AR at 17-18, 517. While he was not taking any medication in June 2015, he

did not report any auditory or visual hallucinations, his affect was constricted and

increased in intensity but stable, his speech was normal, and his "[i]nsight and judgment

regarding his illness and further treatment [were] somewhat improved." AR at 518, 18.

The Court notes (but the ALJ did not) that Plaintiff reported that "from time to time he

believes that his ex-girlfriend and the mother of his children[, Lisa Bramlett,] is able to

send him messages or control him over the dish and TV." AR at 517. Dr. Sadowski also

mentioned that Plaintiff said his anxiety was "reasonably bad" in the "form of 'tension all

---

[3] The ALJ incorrectly stated that Plaintiff "did not receive any psychiatric services again until June 2015 . . . ." AR at 17. Plaintiff attended two psychiatric appointments with Dr. Sadowski in January 2015. *See* AR at 509-16. Indeed, the January 2015 treatment notes ALJ Farris incorrectly attributed to Dr. Marchoni are actually from an appointment with Dr. Sadowski. *See* AR at 17 (citing AR at 472-73).

the time[,]'" and he scored 22 points on the PHQ-9, which indicated "relatively severe depressive symptoms." AR at 518. Plaintiff was ready to try medication again, and Dr. Sadowski prescribed Risperdal (risperidone). AR at 518, 519. Plaintiff returned one week later and reported "that his racing thoughts were completely gone and irritability and anger [had] resolved." AR at 522, 18. He also stated that his "paranoid thoughts are only to [a] minimum[,]" but he "still occasionally thinks that his significant other can control him through the TV but 'the thoughts are very infrequent and [he] know[s] they are not real.'" AR at 522, 18. Dr. Sadowski assessed Plaintiff with schizoaffective disorder, bipolar type, tobacco use disorder, severe, history of marijuana use, severe, in reported remission, and rule out intellectual developmental disorder and learning disabilities. AR at 524.

From this point forward, Dr. Sadowski found that Plaintiff was compliant with his medications and treatment. *See* AR at 592 (November 12, 2015 note: "Patient has a very long history of noncompliance with treatment. However, since reestablishing his care [with Dr. Sadowski], he has been fully compliant with medications and appointments"). Dr. Sadowski observed that Plaintiff was happy on Risperdal, his paranoia was almost completely resolved, and his anxiety and depression were improved. *See* AR at 18, 565, 567 (July 7, 2015 note: "patient presents with almost completely resolved psychosis and mood symptoms dramatically improved"), 572 (August 6, 2015 note: "patient presents with psychosis almost completely resolved; only with residual symptoms present[,] . . . mood has been relatively stable"), 575 (September 8, 2015: "patient reports that he has been doing well on the medication, with irritability and anger completely resolved . . . [and] very minimal depressive

8

symptoms"). Plaintiff suffered from weight gain, likely a side effect of the Risperdal, and Dr. Sadowski switched him to Abilify (aripiprazole) in September 2015. *See* AR at 18, 577. As ALJ Farris noted, however, Plaintiff experienced "difficulty with irritability and anger with Abilify in October 2015," as well as increased depression and anxiety. *See* AR at 18, 580, 585-86. Consequently, Dr. Sadowski changed Plaintiff's medication to Latuda (lurasidone).

Thereafter, Dr. Sadowski's treatment notes reflect that "the medication change was successful, working as well as his prior medication, Risperidone . . . ." AR at 18, 590. In November 2015, Plaintiff reported that his sleep was completely regulated, his irritability was at a minimum, his mood was stable, and all delusions had completely resolved. AR at 590. Plaintiff continued to report that he was "doing really well" with a stable mood, no delusions, and continued weight loss in December 2015. *See* AR at 18, 595. In March 2016, Plaintiff stated that his mood was stable, but he experienced a slight increase in anxiety. AR at 18, 600. In both March and April 2016, Plaintiff reported that he had used marijuana and eaten a lot of junk food, had minimal physical activity, and gained some weight. AR at 18, 600, 604, 606. Plaintiff continued to see benefits from Latuda, however, with objective testing demonstrating decreased depression and a normal level of anxiety. *See* AR at 18, 601 (March 1, 2016 note: PHQ-9 score of 0 points "indicated no depressive symptoms at all"), 605 (April 28, 2016 note: Zung Self-rating Anxiety Scale indicated "relatively normal level of anxiety"). In April 2016, Dr. Sadowski assessed Plaintiff with schizoaffective disorder, bipolar type, in remission, a mild intellectual disability, tobacco use disorder, severe, marijuana use disorder, mild,

rule out moderate-to-severe marijuana use disorder, history of alcohol use disorder in reported full sustained remission. AR at 18, 605.

In his treatment notes, Dr. Sadowski opined that Plaintiff is "fully unemployable due to [the] nature and severity of his mental health problems as well as intellectual level of functioning." AR at 587; *see also* AR at 18, 592, 597, 602, 606. Dr. Sadowski further opined that Plaintiff "has significant difficulties with understanding more complex instructions, [and] easily get [sic] frustrated and decompensates when unable to understand tasks required from him." AR at 582-83; *see also* AR at 18. In Dr. Sadowski's opinion, "even a relatively low-stress work environment could be an overburden for [Plaintiff]." AR at 583.

In discussing Dr. Sadowski's opinion that Plaintiff is "fully unemployable," ALJ Farris gave the opinion "little weight," as it was not offered "by a vocational expert." AR at 18. The ALJ found that the RFC accounts for the limitations Dr. Sadowski opined – namely, Plaintiff's "difficulties with complex instructions and" the fact that he "would become frustrated and stressed and decompensate when dealing with his inability to understand" instructions. AR at 18. Plaintiff argues that the ALJ erred in not giving Dr. Sadowski's opinion "controlling weight," as he was Plaintiff's treating psychiatrist for 1.5 years and considered reports from Ms. Bramlett, records from Plaintiff's former treating source and neurologist, and the findings of tests done by Dr. Cynthia Lose, who assessed Plaintiff's cognitive abilities. *See Doc. 28* at 14. Plaintiff contends that "Dr. Sadowski's conclusions are fully consistent with the opinions of other treating medical sources" and the reports from former therapists. *Id.*

To the extent the ALJ discounted Dr. Sadowski's opinion that Plaintiff is "fully unemployable," the Court finds no reversible error. "Under the controlling regulations, the final responsibility for deciding the ultimate issue of whether a social security claimant is 'disabled' or 'unable to work' is reserved to the Commissioner." *Mayberry v. Astrue*, 461 F. App'x 705, 708 (10th Cir. 2012) (citations omitted); *see also* 20 C.F.R. §§ 404.1527(d)(1) and 416.927(d)(1). "Consequently, an ALJ is not bound by a treating physician's opinion on the ultimate issue of disability, and such an opinion is never entitled to controlling weight or special significance." *Mayberry*, 461 F. App'x at 708 (citing SSR 96-5p, 1996 WL 374183, at *1, *2, *5 (July 2, 1996)).

With respect to Dr. Sadowski's remaining opinions regarding Plaintiff's limitations, Plaintiff fails to develop any argument for the Court to examine. *See Doc. 28* at 14. Plaintiff makes no argument that the ALJ failed to adequately weigh Dr. Sadowski's opinion. *See id.* Plaintiff does not specifically "acknowledge or dispute any of the ALJ's findings about Dr. Sadowski's opinion" (*see Doc. 29* at 20), nor does Plaintiff argue that the ALJ incorrectly determined that Plaintiff's RFC accounts for the opined limitations. *See Doc. 28.* Accordingly, the Court will deny Plaintiff's motion with respect to this issue.

### B.   The Court will remand for the ALJ to reexamine whether Plaintiff meets the listing at Section 12.05C.

Plaintiff next contends that ALJ Farris should have found that he met listing 12.02 (neurocognitive disorders) and/or 12.05C (intellectual disorder). *See Doc. 28* at 14-18. The Government disagrees and argues that Plaintiff cannot establish that he met the criteria for either per se disabling impairment. *Doc. 29* at 11. It is Plaintiff's "burden at

step three of demonstrating, through medical evidence, that his impairments 'meet *all* of the specified medical criteria' contained in a particular listing." *Riddle v. Halter*, 10 F. App'x 665, 667 (10th Cir. 2001) (quoting *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990)).

With respect to neurocognitive disorders, Plaintiff does little more than list the criteria for Listing 12.02. *See Doc. 28* at 16. Because he develops no argument to establish that he meets the criteria, the Court finds that he has not met his burden to show he has a per se disabling impairment pursuant to Listing 12.02.

At the time of ALJ Farris's decision, "Listing 12.05C require[d] '[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing additional and significant work-related limitation of function.'"[4] *Hinkle v. Apfel*, 132 F.3d 1349, 1351 (10th Cir. 1997) (quoting 20 C.F.R. Pt. 404, Subpt. P, App. 1). In 2015, Dr. Cynthia Lose, Psy. D., conducted psychological testing to determine Plaintiff's cognitive abilities. *See* AR at 607-15. She administered the Wechsler Adult Intelligence Scale (WAIS-III) and reported that Plaintiff has a verbal IQ of 79, a performance IQ of 69, and a full scale IQ of 72. AR at 612. Plaintiff correctly points out that his performance IQ of 69 satisfies the first prong of a disabling impairment under 12.05C. *Doc. 28* at 12, 15. "Although Plaintiff's [verbal and full scale] IQ score[s were] above the range of 60 to 70, listing 12.00 for all mental disorders directs that '[i]n cases where more than one IQ is customarily derived from the test administered, e.g. where verbal, performance, and full scale IQs are provided in the

---

[4] The Social Security Administration revised the criteria in the mental listings effective January 2017. *See Revised Medical Criteria for Evaluating Mental Disorders*, 81 Fed. Reg. 66138-01 (Sept. 26, 2016). Because the changes were not in effect on the date of ALJ Farris's decision, the prior regulations govern the decision in this case.

Wechsler series, we use the ***lowest*** of these in conjunction with 12.05.'" *Turnage v. Astrue*, No. CIV. 11-4071-JAR, 2012 WL 405590, at *5 (D. Kan. Feb. 8, 2012) (quoting 20 C.F.R. part 404, subpt. P, app. 1, § 12.00(D)(6)(d)) (emphasis added). Plaintiff's performance IQ, the lowest score of the three, falls within the presumptive range. And Plaintiff's schizoaffective bipolar disorder, which ALJ Farris found to be a severe mental impairment at Step Two, seems to "satisfy the de minimis standard for meeting the listing's significant limitation requirement." *See Havenar v. Astrue*, 438 F. App'x 696, 698 (10th Cir. 2011) (citing *Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008) ("observing that the 'significant limitation' standard closely parallels the de minimis standard of step two")).

Despite Plaintiff's performance IQ score of 69, the ALJ stated that Plaintiff "does not have a valid verbal, performance, or full scale IQ of 60 through 70" and found that he does not meet the requirements of 12.05C. AR at 15 (emphasis added). To be sure, the "IQ scores must be valid" to meet listing 12.05C. *See Turnage*, 2012 WL 405591, at *5. But ALJ Farris did not suggest that the WAIS-III results were somehow invalid. *See* AR at 15-19. Further, the Commissioner does not appear to challenge the validity of the scores and has presented no evidence refuting their validity. Dr. Lose was certainly capable of determining that a score was invalid, as evidenced by her finding that Plaintiff's test results on the Personality Assessment Inventory were invalid due to his "failure to attend, including reading difficulties, careless or random responding, marked confusion or idiosyncratic item interpretation." *See* AR at 613-14. But as to the WAIS-III, Dr. Lose did not indicate that she questioned the test's validity. Further, there is no reason to "question the validity of the scores based on Plaintiff's performance[,]" *see*

*Turnage*, 2012 WL 405591, at *5, as Dr. Lose observed that Plaintiff "did not appear to be under the influence of any substance. His motivation and commitment to perform at his best was evident through most of the exam. He seemed willing to please the examiner and did his best to answer all that was asked." AR at 612.

In support of the ALJ's conclusion, the Commissioner emphasizes Dr. Lose's statement that "[t]he Full Scale IQ is considered to be the most representative measure of global intellectual functioning." AR at 613; *Doc. 29* at 13. But Dr. Lose was not opining on the validity of the lower performance IQ score. More importantly, the ALJ did not discuss the validity of the lower score, and it would be inappropriate for the Court to make such a finding as a matter of first impression. *See Havenar*, 438 F. App'x at 699 (finding that where ALJ did not make findings on whether claimant "satisf[ied] the capsule definition of listing 12.05C[,] . . . it would be beyond the scope of appellate review to make such a finding in the first instance" and would constitute "an impermissible post-hoc justification for the ALJ's deficient explanation") (citing *Haga v. Astrue*, 482 F.3d 1205, 1207-08 (10th Cir. 2007)). Consequently, the Court remands this matter to the ALJ for a corrected and complete analysis at Step Three.[5]

## V.    Conclusion

The Court finds that this case should be remanded for the ALJ to address whether Plaintiff meets the criteria for a per se disabling impairment under Listing 12.05C.

Wherefore,

---

[5] Because the Court will remand for additional analysis at Step Three, the Court declines to address the remaining issues Plaintiff raises in his motion (*see Doc. 28* at 16-19) and for the first time in his reply brief (*see Doc. 33*).

**IT IS ORDERED** that Plaintiff's Motion to Reverse or Remand Administrative

Agency Decision (*Doc. 27*) is **GRANTED**.


_____
UNITED STATES MAGISTRATE JUDGE
Presiding by Consent